## McNinch and Wife *versus* Trego.

1. J. and E., partners, purchased two lots which were paid for by firm goods. The deed was made to I. He, his widow and a minor child, continued in possession for more than seven years : and the widow made improvements with the knowledge of E., who afterwards recovered in ejectment against a tenant of the child. The child brought ejectment against E. *Held*, that without an acknowledgment in writing of a trust in E., or notice of his claim, the limitation in the Act of April 22d 1856, sect. 6, barred E., although in possession at the issuing of the writ.

2. When the cestui que trust is in possession *during* the running of the statute, the limitation does not apply, the possession being a continued claim of the trust.

3. Clarke *v.* Trindle, 2 P. F. Smith 492, recognised.

January 31st 1873.    Before READ, C. J., AGNEW, WILLIAMS and MERCUR, JJ.    SHARSWOOD, J., at Nisi Prius.

Error to the Court of Common Pleas of *Northumberland county* : No. 19, of September Term 1872.

This was an action of ejectment, brought October 23d 1865, by Marian Trego, by her next friend, &c., against E. Skiles Trego for a house and lot in Milton, Northumberland county, being the westermost of the two lots hereafter mentioned.   During the pendency of the case the plaintiff having attained age, and intermarried with William McNinch, the record was amended by inserting the names of William McNinch and Marian his wife as plaintiffs.

The case had been before tried, and resulted in a verdict for the plaintiffs ; the judgment having been reversed by the Supreme Court it was tried the second time, March 18th 1872, before Rockefeller, P. J.

The title to the premises in dispute in 1845 was in Dr. William McCleery.

The plaintiffs gave in evidence deed dated February 1st 1850, from McCleery to Jacob K. Trego for two lots of ground, Nos. 4 and 5 in McCleery's addition to Milton, for the consideration of $500, recorded June 22d 1853.   Deed for the same lots dated March 25th 1850, from Jacob K. Trego to Eli Trego, his father, for the consideration of $1500, recorded June 22d 1853.   Deed for same lots dated April 9th 1850, Eli Trego to Elizabeth Trego,

wife of Jacob K. Trego, consideration "natural love and affection," recorded June 22d 1853. Will of Elizabeth Trego, dated March 1st, and codicil dated March 20th 1858, proved June 29th 1858, devising to her daughter Marian (plaintiff) the interest of all testatrix's real estate till she arrived at twenty-one years, and then the whole of her real estate in fee

The plaintiffs here rested.

The defendant gave evidence by A. J. Chapin that Jacob Trego and the defendant were in partnership as foundrymen in 1845 under the firm name of E. S. Trego & Co.; that about that time Jacob Trego told witness he had purchased the two lots of Dr. McCleery; he intended to build on one, and the other he intended for the defendant; Jacob built on the one lot; he was then in feeble health; defendant had lived on the western lot about ten years.

There was evidence by a number of other witnesses of a similar character.

There was evidence also that Jacob principally kept the books of the firm, the defendant having access to them; Jacob said the houses were to be built principally out of the foundry; McCleery got castings from the foundry in payment of the purchase-money of the lots; the lots were paid for by castings.

Defendant gave evidence for the purpose of showing that the conveyance to Eli Trego, the father, was not bonâ fide, but for the purpose of defrauding the defendant and the creditors of Jacob. Jacob died in June 1853.

He gave evidence that Rebecca Caldwell rented the property from Elizabeth Trego, the widow of Jacob Trego, and occupied it under her in 1858 and 1859. In 1859 the defendant brought an ejectment for the lot against Mrs. Caldwell, in which she alone defended; the attorneys who appeared for her by leave of the court withdrew their appearance, and on "an agreement filed April 3d 1860," judgment was entered for the plaintiff in that suit; from that time the defendant had been in possession.

He gave in evidence the account of McCleery with the firm of E. S. Trego & Co; the charges amounted to $1105.10; the credits were to the same amount; one of them was "by J. K. Trego, $500."

The defendant, who was examined as a witness, testified that "Dr. McCleery paid these two lots on that account."

In rebuttal the plaintiffs gave evidence by Mrs. Caldwell that she had rented the house whilst she lived in it from Mrs. Trego, the widow.

Mary Critzer testified that she lived with Jacob for eighteen months from the fall of 1851; there was no partition fence between the lots; Jacob used the western lot the same as he did the other; the defendant had not used the lot during that time.

Peter O. Campell testified that he built a house for Mrs. Trego

on the premises in 1853, and completed it in 1854; the defendant lived near the lot during the time; it was built against the house of Jacob; on the west end of it; the building was paid for by Mrs. Trego; the lintels for the house were of iron, and were cast by the defendant, he knowing that they were for the house; witness told defendant he was going to build an addition to Mrs. Trego's house; defendant was there frequently whilst witness was building the house; defendant could not come out of his house without seeing the building going up; Mrs. Trego moved into the house in the fall of 1854.

There was additional evidence from a number of witnesses that the defendant knew of the building going up; that when he was told that he should have given notice to Mrs. Trego, he replied that he did not know then that he had title. Also, that Mrs. Trego had occupied the house by herself and tenants up to her death; and Mrs. McNinch by tenants under her guardian until the recovery against Mrs. Caldwell in 1860.

They gave in evidence the accounts of the defendant and Jacob Trego from the firm books.

The balance against the defendant was $3850.61. The balance against Jacob was $3352.63. In his account under date of June 13th 1851, was this charge: "To William McCleery, $500."

The plaintiffs' first point was:—

The plaintiffs have shown a perfect legal title to the lot in dispute, that the deed from Dr. William McCleery to Jacob K. Trego, that from Jacob K. Trego and wife to Eli Trego, and that from· Eli Trego and wife to Mrs. Elizabeth Trego were put upon record in the recorder's office in Northumberland county, on the 22d of June 1853, and if the jury believe that Mrs. Elizabeth Trego, in August or September 1853, entered upon the lot in dispute, and made valuable improvements upon the same, and kept possession thereof from that time until her death in 1858, and that after her death the lot remained in possession of Rebecca Caldwell, to whom she had leased in her lifetime, as the tenant of her daughter Marian, until the 21st day of March 1859, the date of the writ of ejectment by Eli S. Trego against Mrs. Caldwell, without any title or interest in the said Eli S. Trego having been acknowledged to exist by the said Elizabeth at any time during her said possession, or by any guardian of the said Marian, after the death of her said mother, then the 6th section of the Act of the 22d of April 1856, prevents the defendant from setting up his alleged equitable title against the said legal title of the plaintiff, Marian McNinch, and the verdict of the jury should be in favor of the plaintiffs.

The court answered: "We cannot answer this point as requested. The plaintiffs have shown a perfect legal title to the lot in dispute; the deed of Dr. William McCleery to Jacob K. Trego,

that from Jacob K. Trego and wife to Eli Trego, and that from Eli Trego and wife to Mrs. Elizabeth Trego were put upon record in the recorder's office of Northumberland county, on the 22d of June 1853; but under the evidence in this cause we cannot charge ' that if the jury believe that Mrs. Elizabeth Trego, in August or September 1853, entered upon the lot in dispute, and made valuable improvements upon the same, and kept possession thereof from that time until her death, in 1858, and that after her death the lot remained in possession of Rebecca Caldwell, to whom she had leased in her lifetime, as the tenant of her daughter Marian, until the 21st day of March 1859, the date of the writ of ejectment by Eli S. Trego against Mrs. Caldwell, without any title or interest in the said Eli S. Trego having been acknowledged to exist by the said Elizabeth at any time during her said possession, or by any guardian of the said Marian, after the death of her said mother, then the 6th section of the Act of the 22d of April 1856, prevents the defendant from setting up his alleged equitable title against the said legal title of the plaintiff, Marian McNinch, and the verdict of the jury should be in favor of the plaintiffs.'

"The said 6th section of the Act of the 22d of April 1856, provides that ' No right of entry shall accrue, or action be maintained for a specific performance of any contract for the sale of any real estate, or for damages for non-compliance with any such contract, or to enforce any equity of redemption after re-entry made for any condition broken, or to enforce any implied or resulting trust as to realty, but within five years after such contract was made, or such equity or trust accrued, with the right of entry, unless such contract shall give a longer time for its performance, *or there has been in part a substantial performance,* or such contract, equity of redemption or trust shall have been acknowledged in writing to subsist by the party to be charged therewith within the same period—provided, &c.: Purd. Dig. 654–5, pl. 13. I instruct you that if you find from all the evidence in the cause that in 1846 the two brothers E. Skiles Trego and Jacob K. Trego were partners, that they purchased from Dr. William McCleery two lots of ground adjoining each other, for which he was to receive from the firm, and was subsequently paid, five hundred dollars in work at their foundry—that Jacob K. Trego immediately took possession of the eastern lot, and E. Skiles Trego of the western lot of the two thus purchased—that these lots were paid for by castings out of the foundry, that Jacob K. Trego, without the knowledge of E. Skiles Trego, took the deed for the two lots, then the said E. Skiles Trego became the equitable owner of the western lot (being the lot in dispute in this case), and of a resulting trust to him for the same. This was so decided when this case was before the Supreme Court, in my opinion, and I so charge you that if you find the facts as here stated, there has been in

part a substantial performance, within the meaning of the' said 6th section of said Act of Assembly, and the mere fact that Mrs. Elizabeth Trego, after the death of her husband, Jacob K. Trego, took possession and held it from 1853 to 1858, and by her tenant from that time to the 21st of March 1859, will not prevent the defendant setting up his equitable title against the legal title of the plaintiffs.''

There were other points submitted by each party, not necessary to notice here.

The jury found a verdict for the defendant. The plaintiffs took out a writ of error and, with others, assigned for error the answer to their first point.

*J. W. Comly* (with whom was *J. W. Brown*), for plaintiffs in error, referred to Act of April 22d 1856, sect. 6, Pamph. L. 532, 2 Br. Purd. 930, pl. 14; Rider *v.* Maule, 10 Wright 376.

*S. P. Wolverton* and *G. F. Miller* (with whom was *J. Porter*), for defendant in error.—The limitation under the Act of 1856, in relation to a parol trust does not apply to cestui que trust in possession : Smith *v.* Tome, 18 P. F. Smith 158; Clark *v.* Trindle, 2 Id. 492; Richards *v.* Elwell, 12 Wright 361.

The opinion of the court was delivered, March 17th 1873, by

AGNEW, J.—When this case was here before, the only question was whether under the facts then in evidence a trust arose for E. S. Trego under the purchase by his brother Jacob. These facts, as stated in the opinion of the present Chief Justice, were that the brothers, partners in a foundry, purchased two lots of Dr. Wm. McCleery for $500, to be paid in castings out of the foundry. The purchase-money was so paid. Jacob took possession of the eastern lot, and Eli of the western lot, and Jacob without the knowledge of Eli took the deed in his own name. In answer to a point the court below instructed the jury against the trust, and this court reversed the judgment on this point alone, being of the opinion that a trust for Eli S. Trego did arise under the circumstances. In the present case a new question is brought up arising on these facts. The original purchase of McCleery was in 1846, and the deed was made to Jacob in February 1850. In March 1850 Jacob conveyed the lot in dispute (*inter alia*) to his father, Eli Trego, who with his wife conveyed this lot in April 1850 to Mrs. Elizabeth Trego, wife of Jacob Trego. Jacob was then in declining health : and the partnership was dissolved sometime afterward, perhaps in 1852 or 1853. The precise date is not given, but under the last date, 1851, the accounts of the partners appear to have been balanced, exhibiting in Jacob's account a balance against him of $3352.63 and against Eli a balance of $3850.61. In Jacob's account he was

[McNinch v. Trego.]

charged with $500 by *Wm. McCleery*, being just the amount of the purchase-money of the two lots, and in the account of Dr. Wm. McCleery, he was credited with the same sum $500 by *Jacob Trego*. Thus with this charge against Jacob for the purchase-money, the balance against Eli S. Trego in the partnership account was, including subsequent entries, much greater than that against Jacob. Jacob died in June 1853, the deeds were recorded in that month, including the deed from Mr. Eli Trego and wife to Mrs. Elizabeth Trego, wife of Jacob. In the same year Mrs. Trego being in the possession of the lot went on to build upon it. She built a good brick house immediately in sight from Eli S. Trego's door and of the foundry, where he must have seen it from day to day. He gave no notice of any claim of title on his part during the progress of the building, and suffered Mrs. Trego to retain possession by herself and her tenants until the year 1859, when he brought the first ejectment, in which he obtained judgment by default against her tenant and upon this judgment turned out the tenant, Mrs. Trego having died in 1858. Thus Mrs. Trego being possessed of the legal title adversely to the trust under which Jacob had held, in the first instance, for Eli, was suffered to place valuable improvements on the property and to remain in possession for more than five years after 1853 and more than two years after the passage of the Act of 22d April 1856, without any acknowledgment on her part of the trust either verbal or written, and indeed without any assertion of the trust by Eli S. Trego. Under these circumstances the plaintiffs in their first point asked the court to charge that the 6th section of the Act of 22d April 1856, there being no acknowledgment of the trust, was a bar to the defendant's claim by way of a resulting trust. The learned judge in the court below seems to have misconceived the bearing of the point, or else relying too confidently on what he supposed was the decision of this court in the former writ of error, did not charge upon the question of limitation under the 6th section of the Act of 1856, but charged in substance and effect, that if the jury found the existence of the trust under the former opinion of this court, and that Eli S. Trego had gone into possession under it, his equitable title was sufficient and would prevail against the legal title of the plaintiffs. But the error of the learned judge was this, that the point conceded the trust and asked the court to charge that it was barred by the limitation contained in the 6th section of the Act of 1856, because there had been no acknowledgment of the trust by Mrs. Trego as required by that section for more than five years after the legal title had been vested in her, while he refused the instruction and rested the case on the mere existence of the trust. It is true he seems to have thought that the limitation contained in the 6th section was inoperative on the ground that Eli S. Trego had gone into possession: and in this court the charge has been en-

[McNinch *v.* Trego.]

deavored to be supported on the same ground, under the decision in Clark *v.* Trindle, 2 P. F. Smith 492, and other cases.   There is no question of the soundness of these decisions, that when the *cestui que trust* is in possession during the running of the statute, the limitation does not apply, the possession being a constant assertion and continual claim of the trust.    But the plaintiff's point assumed, and the evidence very clearly established the fact of Mrs. Elizabeth Trego's possession under the legal title, and Eli S. Trego's non-claim of the trust during a greater period than five years from her taking possession and even more than five years after she had built her house.    To meet this the 6th section of the Act of 1856 requires that the trust shall be acknowledged *by writing* to subsist, otherwise no right of entry shall accrue or action be maintained to enforce the trust.    The court below ought to have affirmed the first point and submitted the facts on which it rested to the decision of the jury.

Judgment reversed, and a *venire facias de novo* awarded.